### MISSOURI PACIFIC RAILROAD COMPANY *v.* SMITH & COMPANY.

#### Opinion delivered October 13, 1924.

1. CARRIERS—DAMAGES TO SHIPMENT—INSTRUCTION.—An instruction, in an action for damage to cotton caused by the carrier's negligence in exposing it to the weather, that it was the duty of the shipper immediately to recondition the cotton in order to minimize the damages, was properly modified by adding, "unless you find from the proof that a custom prevailed in Memphis [the destination] to do this as the cotton was sold;" the testimony tending to establish such custom, and there being no evidence that such custom did not meet the requirements of ordinary care.

2. CARRIERS—DAMAGES TO SHIPMENT—MARKET PRICE.—Where the cause of action against a carrier was for damage to a shipment of cotton by permitting it to become unnecessarily water-soaked, and not for failure to deliver the cotton in time for any particular market, it was not error to refuse an instruction which would have permitted the jury to take into account the fact that the market price of cotton on the day the cotton was delivered was higher than on the day when the cotton should have been delivered, had there been no negligent delay.

Appeal from Cross Circuit Court; *W. W. Bandy,* Judge; affirmed.

*Thos. B. Pryor* and *Daggett & Daggett,* for appellant.

Instruction No. 3 requested by appellant correctly states the law with reference to the duty of the consignee to receive the cotton when it was tendered, recondition it, and thereby minimize the damage. 4 R. C. L., Carriers, § 285; 101 Ark. 172; Ann. Cas. 1914A, note 66. The measure of damages, as declared in the instruction requested, is elementary. 74 Ark. 358; 90 Ark. 452. Of course, the failure to deliver in a reasonable time is a breach of the contract, but the consignee cannot refuse to accept the goods and sue for conversion, and the measure of damages is as stated. 90 Ark. 524; 99 Ark. 568. The liability of the carrier ceases on delivery of the goods, and damages accrued to that time is the full measure of liability. 124 Ark. 490. The claim for damages accrues on delivery of the goods in a damaged condition. Damages accrued at that time only are recoverable. 88 Ark. 594.

*T. E. Lines, Killough, Killough & Killough,* for appellee.

SMITH, J. W. M. Smith & Company sued the Missouri Pacific Railroad Company, alleging that on March 15, 1920, plaintiffs delivered to defendant at Parkin, Arkansas, 33 bales of cotton consigned to Memphis, Tenn.; that the cotton was delivered in Memphis on April 27, 1920; that defendant negligently permitted the cotton to get wet; and prayed for damages in the sum of $3,000. The jury returned a verdict for plaintiff in the sum of $2,108.55, with interest at 6 per cent. from April 26, 1920. From the judgment on the verdict defendant has appealed.

The theory on which appellee recovered judgment in the court below is reflected in an instruction numbered 3, requested by the appellant railroad company, the defendant below. This instruction was given, after modifying it by adding the clause, "unless you find from the proof that a custom prevailed in Memphis to do this as the cotton was sold." This clause is set out in the instruction as given, and is inclosed in parentheses, and, as thus modified, the instruction reads as follows:

"You are instructed that, even though you find that the cotton was damaged by exposure to the elements, such damage being occasioned by the negligence of the defendant in allowing the said cotton to remain on the platform at Parkin from the date bill of lading was issued until the date of shipment, and that said cotton was delivered to the consignee in Memphis in a damaged condition, you are further instructed that it was the duty of the plaintiff's agent to consignee to immediately (unless you find from the proof that a custom prevailed in Memphis to do this as the cotton was sold) recondition said cotton and thereby minimize the damage to that part of the cotton not damaged at the date of delivery. And in determining the amount of damage accruing to the plaintiff as of the date the cotton was delivered in Memphis, the measure of damages will be the difference in the value of the cotton as of the date delivery should have been made in Memphis by the defendant company and the value of the cotton as it would have been in its reconditioned form as of the date delivery was actually made."

Appellant excepted to the modification and the giving of the instruction as modified.

The testimony shows that the cotton was delivered to the appellant company at Parkin, Arkansas, a station on appellant's railroad, on March 15, 1920, for shipment to Memphis, Tennessee, thirty-three miles distant, but was not delivered in that city until April 27, 1920. During the larger part of this time the cotton stood on an uncovered platform, and frequent heavy rains fell on it, and it is conceded this testimony is sufficient to support the finding made by the jury, as reflected by the verdict returned, that the cotton was damaged by reason of a negligent delay of appellant company to transport the cotton within a reasonable time.

The testimony shows that the cotton was sold in various quantities by the consignee, a cotton factor, and that the last of it was not sold until about a year after its receipt. The testimony also shows that the cotton

was not "reconditioned" until it was sold, but each bale was reconditioned as it was sold. By reconditioning the cotton is meant the removal of the damaged cotton from the bale of which it was a part. It is the insistence of the railroad company that this should have been done immediately upon delivery of the cotton to the consignee, and the instruction numbered 3 as asked so advised the jury, but the instruction was modified as set out above; the effect of the modification being to tell the jury that it was not the consignee's duty to recondition the cotton immediately, unless a custom prevailed in Memphis to do this as the cotton was received. The correctness of this modification presents the principal question in the case.

It is the insistence of the appellant railroad company that, the cotton having gotten wet, the damage to the cotton on that account would continue to increase until the wet cotton was removed from the bale that is reconditioned, and that the consignee, in discharge of the duty to minimize the damage, should have reconditioned the cotton immediately upon its receipt, and that the carrier should not be held liable for any augmentation of the damage resulting from the failure to recondition immediately, and it is therefore insisted that the modification of instruction numbered 3 set out above was error calling for the reversal of the judgment rendered in appellee's favor.

The undisputed evidence shows that it was the custom of warehousemen handling and storing cotton in Memphis not to recondition damaged cotton until it was sold, but to do so at that time. When a bale was reconditioned, the undamaged cotton was weighed and reported to the factor for whom it was stored, and the damaged cotton, if salable at all, was sold for the account of the owner. The custom of handling damaged or wet cotton was to store it with the wet end up, the bale being placed where the air could strike it, and when this was done the cotton commenced to dry out, and, while this did not repair the existing damage, it arrested any increase of

the damage. The undisputed testimony shows that the cotton in question was so treated, and that the cotton was placed in a court where the air struck it, and the testimony is that, when this was done, the increased damage resulting from the failure to immediately recondition was negligible.

It will be observed that the part of the instruction dealing with the measure of damages took no account of the condition of the cotton at the time of the sale. On the contrary, it correctly told the jury that "in determining the amount of damage accruing to the plaintiff as of the date the cotton was delivered in Memphis, the measure of damages will be the difference in the value of the cotton as of the date delivery should have been made in Memphis by the defendant company and the value of the cotton as it would have been in its reconditioned form as of the date delivery was actually made." In other words, if the railroad company was liable, the measure of its liability was the value of the cotton which had been damaged or destroyed when the cotton reached Memphis, the extent of which damage would have been then shown, had the reconditioning occurred at that time. Now, if the railroad was liable for the damage then existing, it would not be released from this liability because the exact amount of the damage was not ascertained until the cotton was reconditioned, which was not done until the cotton was sold.

This was the damage for which the appellee sued and the theory upon which the recovery was had. This is shown by an instruction, also numbered 3, given at the request of appellee, in which the jury was told that "your first inquiry will be to ascertain the amount in pounds, as near as you can, of the amount of cotton that was damaged and destroyed, and then you will ascertain from the proof what the full market price of that cotton was in Memphis on the day it was delivered to the consignee, and the measure of the damage will be the market price of that cotton that was lost because of its damaged condition."

Having given this instruction, the court, upon modifying appellant's instruction numbered 3, said: "But this instruction as to the measure of damages is really exactly what I have already told you as to the measure of damages, which is to ascertain the amount in pounds of the injured cotton from the proof in the case, and the measure of damages would be the value of that damaged cotton in Memphis on the day the railroad company delivered it in Memphis to the consignee. The two instructions virtually tell you the same thing in different language."

It thus appears that the court definitely limited the recovery to a sum which would compensate the damages existing at the time the cotton was delivered to the consignee.

Moreover, there was no showing that the custom prevailing in Memphis to recondition cotton only upon sale did not meet the requirements of ordinary care; and this was the measure of the consignee's duty in the matter of minimizing the damages, and if this cotton was properly reconditioned, and the effect of the reconditioning was to separate the damaged from the undamaged cotton, and thus ascertain the extent of the damage, liability for having damaged the cotton could not be defeated because the extent of the damage had not been ascertained immediately upon the delivery of the cotton to the consignee.

We conclude therefore that no error was committed in modifying the instruction numbered 3.

An exception was saved to the refusal of the court to give an instruction numbered 4, reading as follows: "You are further instructed that, if you believe from the evidence that the value of the cotton on the Memphis market was greater on the 26th day of April, 1920, the date on which the cotton was actually delivered, than the value thereof on a date within which it could have been delivered in Memphis by the defendant company without unreasonable delay, then the damage suffered by the plaintiff will be limited to such damage as accrued to the

cotton by reason of the negligence of the defendant in allowing the cotton to remain exposed to the elements from the date of the issuance of the bill of lading until the date of delivery thereof in Memphis.''

The insistence is that the testimony shows that the market price of the cotton was actually higher on the date of the delivery of the cotton than it was on any of the days when delivery would have been made, had there been no negligent delay in the delivery, and that the jury should have been permitted to take this fact into account.

It sufficiently answers this insistence to say that this is not a suit for failure to deliver in time for any particular market, but is a suit for the damage done to the cotton by permitting it to become unnecessarily water-soaked. Appellees had the right to hold the cotton and to sell it when they pleased, and they sue to recover only the damage which existed at the time the cotton was received in Memphis.

A large amount of testimony was introduced in regard to this damage to the various bales of cotton comprising this shipment, and no useful purpose would be served by setting it out and discussing it. The testimony shows the weight of the various bales on the date of their arrival in Memphis, which totaled 16,392 pounds, and the deductions from this admitted weight, and the number of pounds thrown out upon reconditioning the cotton, which amounted to 5,815 pounds, and if this amount of cotton was damaged upon the arrival of the shipment in Memphis, a verdict for a larger amount than the one returned might have been rendered.

No error appears, and the judgment is affirmed.